**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CAP BARBELL, INC.** | § | |
| | § | |
| *Plaintiff,* | § | **Civil Action No. 4:22-cv-02371** |
| | § | |
| **v.** | § | |
| | § | |
| **HULKFIT PRODUCTS, INC.,** | § | **JURY TRIAL DEMANDED** |
| **BALANCEFROM LLC,** | § | |
| **and AVINASH NAGAVALLI** | § | |
| | § | |
| *Defendants.* | § | |

**<u>DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND FAILURE TO STATE A CLAIM, OR, IN THE ALTERNATIVE, FOR A MORE
DEFINITE STATEMENT</u>**

13601802

# TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.    SUMMARY OF THE ARGUMENT ...................................................................... 1

III.   STATEMENT OF THE ISSUES ........................................................................ 2

IV.   STANDARDS OF REVIEW ............................................................................ 2

     A.    Challenges to Personal Jurisdiction Under Rule 12(b)(2) .................................... 2

          1.    Due Process Framework ....................................................... 2

          2.    Plaintiff Bears the Initial Burden of Proof ................................... 4

     B.    Failure to State a Claim under Rule 12(b)(6) ......................................... 4

V.    ARGUMENTS AND AUTHORITIES ................................................................. 5

     A.    This Court Lacks Personal Jurisdiction Over Defendants ..................................... 5

          1.    There is No General Jurisdiction ................................................. 5

          2.    There is No Specific Jurisdiction ................................................. 8

               a.    Internet Sales of Products ............................................. 9

               b.    Jurisdictional Allegations Related to Trade Secret Claims........... 11

     B.    The Complaint Fails to State a Plausible Trade Dress Infringement Claim ........ 13

     C.    Plaintiff Has Failed to Plausibly Allege the Existence of Trade Secrets .............. 17

VI.   ALTERNATIVE RELIEF ............................................................................. 19

VII.  CONCLUSION ....................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMID, Inc. v. Medic Alert Found. United States, Inc.*,
   241 F. Supp. 3d 788 (S.D. Tex. 2017) (Rosenthal, C.J.) ...................................................2, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) .......................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................4

*Blue Spike, LLC v. Tex. Instruments, Inc.*,
   No. 6:12-CV-499, 2014 WL 11829323 (E.D. Tex. Mar. 31, 2014) .......................................10

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................................3, 8

*Bustos v. Lennon*,
   538 Fed.Appx. 565 (5th Cir. 2013) .......................................................................................8

*Calder v. Jones*
   , 465 U.S. 783 (1984) ............................................................................................................8

*Cardinal Motors Inc.*, *v. H&H Sports Protection USA, Inc.*,
   No. 20-CV-07899-PAC, 2022 WL 4109721 (S.D.N.Y. Sept. 8, 2022) ................................16

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
   No. CIV.A. H-11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012) ..........................2, 13, 18

*Clements v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) .............................................................................................2, 3

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................................5, 7

*GE Betz, Inc. v. Moffitt-Johnston*,
   885 F.3d 318 (5th Cir. 2018) ...............................................................................................17

*Glazier Grp., Inc. v. Mandalay Corp.*,
   No. CIV.A. H-06-2752, 2007 WL 2021762 (S.D. Tex. July 11, 2007)
   (Rosenthal, C.J.) ("National advertising, not targeted to the forum state, has
   been found insufficient as a basis for general personal jurisdiction.") ....................................7

*Guidecraft, Inc. v. OJCommerce, LLC*,
   No. 2:18-cv-1247, 2019 WL 2373440 (W.D. Pa. May 20, 2019) ..........................................7

ii

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
    No. 4:17-CV-752, 2018 WL 1468239 (S.D. Tex. Mar. 26, 2018) ..........................................7

*Head v. Las Vegas Sands, LLC*,
    298 F. Supp. 3d 963 (S.D. Tex. 2018) ....................................................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..................................................................................................................3

*Hughes v. Bank of Am. Corp.*,
    No. 3:21-CV-00218-N, 2022 WL 179600 (N.D. Tex. Jan. 19, 2022).....................................1

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..................................................................................................................5

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995).......................................................................................................16

*Johnston v. Multidata Sys. Intern. Corp.*,
    523 F.3d 602 (5th Cir. 2008) ...............................................................................................3, 4

*Key Mgmt. Group, LLC v. Meridian Hosp. Sys. Corp.*,
    No. 14-19-00907-CV, 2021 WL 1538237 (Tex. App.—Houston [14th Dist.]
    Apr. 20, 2021, no pet.) ...........................................................................................................12

*Lanard Toys Ltd. v. Toys 2 Discover Inc.*,
    No. CV2104449MWFMRWX, 2022 WL 2155976 (C.D. Cal. Jan. 11, 2022) .................9, 10

*Lonestar Livestock Equip. Co. Inc. v. Southern Livestock Sys., LLC*,
    No. H:15–CV-447, 2015 WL 3756501 (S.D. Tex. Jun. 16, 2015)...........................................4

*Medafor, Inc. v. Starch Med. Inc.*,
    No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16,
    2009) ......................................................................................................................................18

*Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.*,
    No. CIV.A. H-10-1708, 2012 WL 590926 (S.D. Tex. Feb. 22, 2012)
    (Rosenthal, C.J.)......................................................................................................................8

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ..................................................................................................5

*Nat'l Oil Well Varco, L.P. v. Sadagopan*,
    No. CV H-16-2261, 2017 WL 2957908 (S.D. Tex. July 11, 2017) (Rosenthal,
    C.J.).........................................................................................................................................8

*Occidental Petroleum Corp. v. Wells Fargo Bank*, N.A.,
    No. CV H-21-1126, 2022 WL 2223045, at *8 (S.D. Tex. June 21, 2022) ........................1, 12

iii

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
 253 F.3d 865 (5th Cir. 2001) ...................................................................................3

*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,
 771 F. Supp. 2d 680 (S.D. Tex. 2011) ...................................................................17

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
 688 F.3d 214 (5th Cir. 2012) ...................................................................................6

*Predator Downhole Inc. v. Flotek Indus., Inc.*,
 504 S.W.3d 394 (Tex. App.—Houston [1st Dist.] 2016, no pet.) .........................12

*Provident Precious Metals, LLC v. Northwest Terr. Mint, LLC*,
 117 F. Supp. 3d 879 (N.D. Tex. 2015) ..................................................................14

*Qualitex Co. v. Jacobson Prods. Co.*,
 514 U.S. 159 (1995)................................................................................................14

*Revell v. Lidov*,
 317 F.3d 467 (5th Cir. 2002) .................................................................................11

*S-E-A, Ltd. v. Cornetto*,
 No. CV JKB-18-1761, 2018 WL 3996270 (D. Md. Aug. 21, 2018) .....................18

*Stroman Realty, Inc. v. Wercinski*,
 513 F.3d 476 (5th Cir. 2008) ...................................................................................8

*Submersible Sys., Inc. v. Perforadora Central*,
 S.A., 249 F.3d 413 (5th Cir. 2001) ..........................................................................3

*Taco Cabana Int'l, Inc. v Two Pesos, Inc.*,
 932 F.2d 1113 (5th Cir. 1991) ...............................................................................13

*Test Masters Educ. Servs. v. State Farm Lloyds*,
 791 F.3d 561 (5th Cir. 2015) .................................................................................13

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
 532 U.S. 23 (2001)..................................................................................................13

*Transverse, LLC v. Info Directions, Inc.*,
 No. A-13-CV-101 SS, 2013 WL 3146838, at *4 (W.D. Tex. June 17, 2013),
 report and recommendation adopted, No. A-13-CA-101-SS, 2013 WL
 12133970 (W.D. Tex. Aug. 30, 2013) ..........................................................5, 11, 12

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
 505 U.S. 763 (1992)................................................................................................13

iv

*Viahart, LLC v. Arkview LLC,*
   No. 6:19-CV-00406, 2020 WL 4905542 (E.D. Tex. Aug. 20, 2020) ........................6, 7, 9, 10

*Walden v. Fiore,*
   571 U.S. 277 (2014) ...........................................................................................................3, 8, 11

*Webpass Inc. v. Banth, No. C14-02291 HRL,*
   2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) ......................................................................18

*Wilson v. Belin*,
   20 F.3d 644 (5th Cir. 1994) ....................................................................................................3

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001)..................................................................................................13

**Statutes**

Tex. Civ. Prac. & Rem. Code §§ 17.041-.045 ..............................................................................3

**Other Authorities**

Fed. R. Civ. P. 8..........................................................................................................................2, 4

Fed. R. Civ. P. 12(b)(2).........................................................................................................1, 2, 19

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 4, 17, 19

Fed. R. Civ. P. 12(e) ...................................................................................................................1, 19

13601802

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Defendants Hulkfit Products, Inc. ("Hulkfit"), BalanceFrom LLC ("BalanceFrom"), and Avinash Nagavalli ("Nagavalli") (collectively, "defendants") move to dismiss plaintiff CAP Barbell Inc.'s ("CAP" or "plaintiff") complaint in its entirety pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. In the alternative, defendants move to dismiss Counts 1-3 of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted or for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.

## II.     SUMMARY OF THE ARGUMENT

This Court lacks general and specific personal jurisdiction over defendants because their only contacts with Texas are the sale of products via the internet. "Merely doing business in a particular market is not enough." *Occidental Petroleum Corp. v. Wells Fargo Bank*, N.A., No. CV H-21-1126, 2022 WL 2223045, at *8 (S.D. Tex. June 21, 2022) (Rosenthal, C.J.) (quoting *Hughes v. Bank of Am. Corp.*, No. 3:21-CV-00218-N, 2022 WL 179600, at *4 (N.D. Tex. Jan. 19, 2022)).  If the Court were to accept plaintiff's theory of personal jurisdiction, then anyone who sold a product over the internet would be subject to jurisdiction anywhere that product may have been advertised or purchased by anyone.  This would essentially eliminate the concept of personal jurisdiction altogether. And "[a]lthough [CAP] alleges that [it] suffered the injury as a result of [defendants'] conduct towards [CAP], mere injury to a forum resident is not a sufficient connection to the forum." *Id.*

If this Court finds it has jurisdiction over defendants, plaintiff's claim for trade dress infringement should be dismissed because it fails to set forth with adequate specificity the scope of its asserted designs. CAP's compliant fails to articulate specific design elements that comprise any distinct trade dress and instead only points to "broadly defined elements" without describing

1

the claimed trade dress with sufficient clarity.  *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 807 (S.D. Tex. 2017) (Rosenthal, C.J.). Further, CAP's weight plate designs are generic, commonplace in the industry, and contain elements that are clearly functional.

Finally, counts 2-3 of CAP's Complaint should be dismissed for failure to state a viable claim against defendants for misappropriation of trade secrets under either the Texas Uniform Trade Secrets Act or the Federal Defend Trade Secrets Act ("DTSA"). CAP's Complaint contains only vague, categorical descriptions of its purported trade secrets. Generic categories of information, however, are insufficient to satisfy the pleading standard under FED R. CIV. P. 8. Rather, a complaint for trade secret misappropriation must identify the "specific trade secret information [the plaintiff] claims has been misappropriated." *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. CIV.A. H-11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012).

## III.   STATEMENT OF THE ISSUES

**Issue 1:** Does the Court have personal jurisdiction over defendants where defendants are not Texas residents and the only contacts defendants have with Texas are the sale of products via the internet that are sold nationwide and abroad?

**Issue 2:** Has plaintiff plausibly alleged trade dress infringement where its asserted trade dress relates only to broadly defined elements?

**Issue 3**: Has plaintiff plausibly alleged it owns trade secrets where the Complaint only provides broad categories of information?

## IV.   STANDARDS OF REVIEW

### A.   Challenges to Personal Jurisdiction Under Rule 12(b)(2)

#### 1.   Due Process Framework

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.  *Clements v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).  In Texas, however,

this two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)); *see also* TEX. CIV. PRAC. & REM. CODE §§ 17.041-.045.  Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985); *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

Minimum contacts can be established through the assertion of either general or specific jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).  Specific jurisdiction refers to a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n. 8.  When analyzing specific jurisdiction, the court's only focus is on the defendant's contacts with the forum state specific to the cause of action, not the plaintiff's contacts, or contacts unrelated to the cause of action. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  General jurisdiction, on the other hand, refers to a suit which does not arise from the nonresident's contacts with the forum, and may only be asserted over defendants who maintain "continuous and systematic" contacts in a particular forum. *Helicopteros*, 466 U.S. at 415.  The continuous and systematic contacts test for general jurisdiction "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Central*, S.A., 249 F.3d 413, 419 (5th Cir. 2001).

### 2. Plaintiff Bears the Initial Burden of Proof

"When a district court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a *prima facie* showing of jurisdiction." *Lonestar Livestock Equip. Co. Inc. v. Southern Livestock Sys., LLC,* No. H:15-CV-447, 2015 WL 3756501, at *2 (S.D. Tex. Jun. 16, 2015) (citing *Johnston*, 523 F.3d at 609).   If a plaintiff makes the requisite prima facie showing, then the burden shifts to the defendant to negate the second prong of the due-process test by showing "that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Johnston*, 523 F.3d at 609.

### B. Failure to State a Claim under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).   To withstand a Rule 12(b)(6) motion, the plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).   Meeting this standard requires more than legal conclusions reciting the elements of the claim; it requires enough factual allegations which, if taken as true, raise the pleader's chances of success on the merits above a mere possibility. *Twombly*, 550 U.S. at 555. As the Court observed in *Ashcroft v. Iqbal*: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. 662, 678 (2009).

## V.   ARGUMENTS AND AUTHORITIES

### A.   This Court Lacks Personal Jurisdiction Over Defendants

Because plaintiff's complaint alleges, at most, that defendants' contacts to Texas are sales over the internet via third party providers like Amazon and Shopify, there is no general or specific jurisdiction over them.

### 1.   There is No General Jurisdiction

Defendants' contacts with Texas are far from sufficient to meet the high standard the Fifth Circuit has set to establish general jurisdiction. Since the United States Supreme Court's decision in *Daimler AG v. Bauman,* 571 U.S. 117, 126 (2014), federal and state courts have narrowed the application of general personal jurisdiction. In *Daimler*, the Supreme Court "declined to stretch general jurisdiction beyond limits traditionally recognized," recognizing that "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler*, 571 U.S. at 128-129. As *Daimler* made clear, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760. Accordingly, general jurisdiction arises when the defendant's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 754 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Based on these principles, the Fifth Circuit has observed that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). And it "is not enough for a defendant merely to do business with Texas; rather, a defendant must a have a business presence in Texas." *Transverse, LLC v. Info Directions, Inc.*, No. A-13-CV-101 SS, 2013 WL 3146838, at *4 (W.D. Tex. June 17, 2013), report and recommendation adopted, No. A-13-CA-101-SS, 2013 WL 12133970 (W.D. Tex. Aug. 30, 2013) (citing *Johnston*, 523 F.3d at 609 (5th Cir.2008)).

5

As its basis for general jurisdiction, CAP states that "Defendants have maintained continuous and systematic contacts with Texas by advertising their products to residents of Texas and selling products directly into Texas via Amazon.com, Hulkfitproducts.com, and BalanceFrom.com." Compl. ¶ 7. To support this contention, plaintiff cites to an exhibit, which is just a print-out of defendants' Amazon listings. *See id.* at Ex. A. Plaintiff next avers that "Defendants are warehousing their products in Texas for sale to residents of Texas." *Id.* at ¶ 7. Specifically, plaintiff contends that "BalanceFrom warehouses its infringing products in Texas and has sold the infringing products into Texas, including into Houston." *Id.*

But defendants Hulkfit and BalanceFrom are both California entities operating in California. Ex. 1 at ¶ 3 [Nagavalli Decl.]; Ex. 2 at ¶ 3 [Liu Decl.]. And both entities' sole business consists of internet sales of consumer products—primarily fitness equipment.  Ex. 1 at ¶ 3 [Nagavalli Decl.]; Ex. 2 at ¶ 3 [Liu Decl.]. Plaintiff's allegation that "'***Defendants'*** are warehousing their products in Texas" is simply not true.  If defendants' products are warehoused in Texas, it is ***Amazon*** that warehouses any such products in Texas. Ex. 1 at ¶ 4 [Nagavalli Decl.]; Ex. 2 at ¶ 4 [Liu Decl.]. And CAP should understand this since it states elsewhere in its complaint that CAP "sells its products wholesale to Amazon, who in turn sells them to consumers." Complaint ¶ 14. CAP does not allege that defendants maintain a physical place of business in Texas. *Id.* at ¶ 7. In fact, Hulkfit and BalanceFrom have no offices and are not licensed or registered to do business in Texas; have no agents, sales staff, or other employees in Texas; neither own nor lease property of any kind in Texas; have no Texas telephone number; and have no contractual relationships, and no bank accounts, loans, or financial ties of any kind to Texas. Ex. 1 at ¶ 4 [Nagavalli Decl.]; Ex. 1 at ¶ 5 [Liu Decl.].

CAP's bald allegations of internet sales of products to Texas residents —which are sold by defendants throughout the entire United States (and abroad)—are insufficient to establish general jurisdiction. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227-28 (5th Cir. 2012) (holding that the court lacked jurisdiction despite internet sales into Texas because Plaintiff did not purposefully direct those sales towards Texas); *see also Viahart, LLC v. Arkview LLC*, No. 6:19-CV-00406, 2020 WL 4905542, at *4 (E.D. Tex. Aug. 20, 2020) (holding the court must "ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, ***even if that site is 'interactive.'***"). The defendant must somehow purposefully target the forum state. *Viahart v. Arkview*, 2020 WL 4905542 at *4 (citing *Pervasive Software*, 688 F.3d 214 at 227-28); *Guidecraft, Inc. v. OJCommerce, LLC*, No. 2:18-cv-1247, 2019 WL 2373440, at *5 (W.D. Pa. May 20, 2019) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)).

Accordingly, CAP cannot establish defendants' "affiliations with [Texas] are so continuous and systematic as to render [them] essentially at home." *Daimler*, 134 S. Ct. at 761; *see also Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 977 (S.D. Tex. 2018) ("Recent case law within the Fifth Circuit appears to uniformly hold that mere internet presence within a forum does not generate general jurisdiction."); *Glazier Grp., Inc. v. Mandalay Corp.*, No. CIV.A. H-06-2752, 2007 WL 2021762, at *10 (S.D. Tex. July 11, 2007) (Rosenthal, C.J.) ("National advertising, not targeted to the forum state, has been found insufficient as a basis for general personal jurisdiction."); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, No. 4:17-CV-752, 2018 WL 1468239, at *3 (S.D. Tex. Mar. 26, 2018) (finding no general jurisdiction and noting the defendant "is not licensed to sell insurance in Texas, has no Texas office, does not own property in Texas, has no Texas employees, and has no financial accounts in Texas.").

There is similarly no general jurisdiction whatsoever over individual defendant Nagavalli. Mr. Nagavalli, the sole owner of Hulkfit, has not established any substantial, continuous, or systematic contacts with Texas necessary to support general jurisdiction.  He is domiciled in Washington state, does not own property in Texas, and has only been to Texas for personal reasons (at that not since 2015); and he does not personally transact any business in Texas. Ex. 1 at ¶ 7 [Nagavalli Decl.]. This Court does not have general jurisdiction over Mr. Nagavalli on these facts. *See Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.*, No. CIV.A. H-10-1708, 2012 WL 590926, at *4 (S.D. Tex. Feb. 22, 2012) (Rosenthal, C.J.) ("The undisputed record evidence reveals that Palmer is a California resident who does not have offices, bank accounts, employees, or business records in Texas; does not own real property in Texas; does not regularly travel to Texas for business; does not regularly solicit business in Texas; and does not derive substantial revenue from services rendered in this state.").

### 2.      There is No Specific Jurisdiction

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 285. Specific jurisdiction exists if the non-resident defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472-73. In this setting, courts must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. "In intentional tort cases, the Fifth Circuit has applied the 'purposeful direction' or 'effects' test from *Calder v. Jones,* 465 U.S. 783 (1984)." *Nat'l Oil Well Varco, L.P. v. Sadagopan*, No. CV H-16-2261, 2017 WL 2957908, at *4 (S.D. Tex. July 11, 2017) (Rosenthal, C.J.). However, the Fifth Circuit has "declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident." *Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 486 (5th Cir.

8

2008). "[T]he effects of an alleged intentional tort are merely part of the analysis of minimum contacts." *Bustos v. Lennon*, 538 Fed.Appx. 565, 568 (5th Cir. 2013).

Here, "[i]t is undisputed that no part of [defendants'] course of conduct occurred in [Texas]." *Walden*, 571 U.S. at 288. Thus, CAP necessarily focuses exclusively on the alleged ***effects*** of defendants' alleged conduct in Texas. However, CAP's allegations fail to establish specific jurisdiction, even under the *Calder* effects test.

### a.       Internet Sales of Products

CAP's allegations of internet sales of products to Texas residents cannot establish specific jurisdiction over defendants. A district court in this circuit, relying on binding Fifth Circuit precedent, recently rejected almost identical allegations. *See Viahart*, 2020 WL 4905542, at *3 (citing *Pervasive Software*, 688 F.3d at 227-28 (holding that the court lacked jurisdiction despite internet sales into Texas because the plaintiff did not purposefully direct those sales towards Texas)). In dismissing the complaint, the court held that "the mere operation of ***a commercially interactive web site*** should not subject the operator to jurisdiction anywhere in the world."[1] *Id*. The court reasoned that the defendants could not "control where Amazon stores their products or location where any of the other fulfillment services are performed." *Id*. Instead of "targeting" the forum, the defendant "chose to list their products on Amazon's e-commerce platform simply to profit from the wide geographic reach of the internet, which is not enough to subject them to personal jurisdiction in any state where the internet may reach." *Id*. The court summarized its opinion as follows:

> The court is not persuaded that use of Amazon's fulfillment services is a sufficiently intentional contact with Texas. Furthermore, the court is not persuaded that the sale of product to Texas residents through Amazon's platform is anything more than the fortuitous result of that platform's global presence. Finally, [defendants'] maintenance of their own

---

[1] Emphasis added throughout unless otherwise specified.

presences on the Amazon e-commerce platform, which took place outside Texas and was not targeted intentionally toward Texas, is also insufficient to confer jurisdiction in Texas. *Id.* at *6. Other courts have come to the same conclusion. *See e.g.*, *Lanard Toys Ltd. v. Toys 2 Discover Inc.*, No. CV2104449MWFMRWX, 2022 WL 2155976, at *3 (C.D. Cal. Jan. 11, 2022) ("If the Court were to accept Plaintiff's theory, anyone who sold a product over the internet would be subject to jurisdiction anywhere that product may have been advertised or purchased and this would essentially eliminate the concept of personal jurisdiction.") (internal citations omitted)

The only difference between the facts of *Viahart* and the facts here is that CAP alleges defendants are "advertising their products to residents of Texas and selling products directly into Texas via Amazon.com, Hulkfitproducts.com, and BalanceFrom.com." *Id.* Compl. ¶ 7. While CAP is correct that Hulkfit and BalanceFrom maintain websites where customers may order products, those online interactions are handled by Shopify. Ex. 1 at ¶ 5 [Nagavalli Decl.]; Ex. 2 at ¶ 6 [Liu Decl.]. And just like they do through Amazon, HulkFit and BalanceFrom offer their products for sale on their Shopify sites to customers located in every state in the country and abroad. Ex. 1 at ¶ 5 [Nagavalli Decl.]; Ex. 2 at ¶ 6 [Liu Decl.]. Thus, it cannot be said defendants "targeted" Texas more so than any other state. *See Blue Spike, LLC v. Tex. Instruments, Inc.*, No. 6:12-CV-499, 2014 WL 11829323, at *3 (E.D. Tex. Mar. 31, 2014) ("The Court's focus is on [the defendant's] actions, not third-party customers."). Rather, defendants here, as in *Viahart*, "chose to list their products on Amazon's e-commerce platform [and their Shopify sites] simply to profit from the wide geographic reach of the internet, which is not enough to subject them to personal jurisdiction in any state where the internet may reach." *Viahart*, 2020 WL 4905542 at *3. In short, selling products on the internet via Amazon and Shopify simply does not open up a business to being sued anywhere in the country.

CAP's allegation that defendants are "advertising their products to residents of Texas" fares no better. The only advertising Hulkfit engages in is on the internet, through third parties like Amazon, Google, and Facebook, and is not geographically focused. Ex. 1 at ¶ 6 [Nagavalli Decl.]. BalanceFrom has only ever advertised its products through Amazon and any such advertising is similarly not geographically focused on Texas (or elsewhere). Ex. 2 at ¶ 6 [Liu Decl.]. To the extent any of these online advertisements were seen by Texas residents, it was merely a fortuitous result of algorithms used by third parties over which defendants exert no control. Ex. 1 at ¶ 6 [Nagavalli Decl.]; Ex. 2 at ¶ 7 [Liu Decl.]; *Walden*, 571 U.S. at 286 ("A forum state's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on ***intentional*** conduct by the defendant that creates the necessary contacts with the forum.").

### b.    Jurisdictional Allegations Related to Trade Secret Claims

In addition to its allegations of internet sales to Texas residents, CAP alleges "Defendants intentionally and willfully interfered with CAP Barbell, a Texas entity, by misappropriating its trade secrets, which were developed in Texas, in order to unfairly compete with CAP Barbell in Texas and divert CAP Barbell's Texas consumers away from CAP Barbell and to Defendants." Compl. ¶ 7.  CAP also maintains that it "has lost customers in Texas as a result of Defendants' conduct." *Id*.

To establish specific jurisdiction over a defendant in the absence of physical contacts with the forum state, a plaintiff must show that "the conduct underlying the claim was purposefully directed at the forum state." *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (finding no jurisdiction over a defendant where plaintiff located in the forum argued it was harmed in the forum by alleged defamation of defendant); *see also Transverse, LLC*, 2013 WL 3146838, at *8. "[T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction." *Revell*, 317 F.3d at 473. As the *Transverse* court put it, "the ultimate issue [] is,

regardless of where [the plaintiff] suffered harm, did [the defendant] 'purposefully direct' or 'expressly aim' its activities at Texas?" *Transverse*, 2013 WL 3146838, at *8 (dismissing complaint for lack of personal jurisdiction and stating "[a]t the end of the day, Transverse has failed to show that IDI purposefully directed any activity toward Texas in this case . . . All of the alleged acts that give rise to the claims in this lawsuit took place in New York, North Carolina, and Iowa, not Texas.").

Notably, the complaint does not contend that Mr. Nagavalli—or any defendant—allegedly accessed CAP's trade secret information in Texas—on the contrary, CAP's contention seems to center on acts while Mr. Nagavalli was in the course of his employment by Amazon in Washington. Nor does the complaint allege that defendants purposefully directed any activity at Texas.  Thus, CAP does not allege defendants "actually did anything in Texas that is actionable." *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 408 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (finding no specific jurisdiction where "[plaintiff] alleges only that [defendants] acted to further a conspiracy—conceived and consummated outside of Texas—by engaging in acts that eventually had effects in Texas."). And, even taking CAP's allegations that defendants sought to utilize its trade secrets to supplant CAP as the #1 Amazon seller of strength training equipment as true (as the Court should in this context), it is merely a fortuitous event that CAP is based in Texas and was therefore (allegedly) harmed in Texas.[2] As this Court recently noted, "mere injury to a forum resident is not a sufficient connection to the forum." *Occidental Petroleum Corp.*, 2022 WL 2223045, at *8.  Thus, even assuming CAP's allegations are true, and the ***effects*** of defendants'

---

[2] *See Key Mgmt. Group, LLC v. Meridian Hosp. Sys. Corp.*, No. 14-19-00907-CV, 2021 WL 1538237, at *4 (Tex. App.—Houston [14th Dist.] Apr. 20, 2021, no pet.) ("[T]he location of Meridian's software on servers in Texas was merely fortuitous. Although it may have been foreseeable that KMG was appropriating trade secrets when it remotely accessed Meridian's data, or that KMG interfered with Meridian's contract with PAM based on communications occurring in Pennsylvania, New York, and India, merely directing a tort at a Texas resident is insufficient to establish personal jurisdiction.").

alleged conduct were felt by CAP in Texas, the **conduct** itself "had at best a minimal relationship to Texas." *Transverse*, 2013 WL 3146838, at *8. That is not enough to subject defendants to suit in Texas.

### B. The Complaint Fails to State a Plausible Trade Dress Infringement Claim

To state a claim for trade dress infringement, a plaintiff must sufficiently allege facts showing: (1) nonfunctionality, (2) distinctiveness, either inherent or acquired through secondary meaning, and (3) a likelihood of confusion by consumers through the infringing use. See *Taco Cabana Int'l, Inc. v Two Pesos, Inc.*, 932 F.2d 1113, 1117-18 (5th Cir. 1991) aff'd sub nom. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). Furthermore, the plaintiff must identify the discrete elements of the trade dress that it wishes to protect." *Test Masters Educ. Servs. v. State Farm Lloyds*, 791 F.3d 561, 565 (5th Cir. 2015) (citing 1 McCarthy § 8:3; *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) ("[W]e hold that a plaintiff seeking to protect its trade dress in a line of products must articulate the design elements that compose the trade dress.")). In other words, plaintiff must "do more than just point to the overall look of its trade dress; it must articulate the specific elements which comprise its distinct dress." *AMID*, 241 F. Supp. 3d at 807. A plaintiff cannot merely assert "broadly defined elements," but rather it must identify its claimed trade dress with sufficient "clarity" and "consistency." *Id*.

Here, Plaintiff fails to state a claim for trade dress infringement because (1) its alleged trade dress is functional, (2) its weight plate designs lack distinctiveness, and (3) it failed to articulate any specific elements that describe distinct trade dress.

CAP's trade dress claim fails because the "hand grips," "raised sphere," and "raised stylizing" of CAP's weight plates are clearly functional. "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (finding no trade dress

protection for a dual-spring design of traffic sign stands because it was functional). To qualify for trade dress protection, "the trade dress must be nonfunctional and either be inherently distinctive or have secondary meaning." *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 700 (S.D. Tex. 2013). The Supreme Court has held that the traditional test of functionality is whether the product feature 'is essential to the use or purpose of the article or if it affects the cost or quality of an article." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995). "A feature is essential to the use or purpose of a product if it serves ***any significant function*** other than to distinguish a firm's goods or identify their source." *Provident Precious Metals, LLC v. Northwest Terr. Mint, LLC*, 117 F. Supp. 3d 879, 894 (N.D. Tex. 2015).

The OPHW Weight Plate has "hand grips" for easier handling of the plate, and CAP's own description of this feature proves this. CAP's own Amazon listing states that "[e]ach weight features grip holes ***to provide a secure grip during use***." Ex. 3 at Ex. E thereto [Amazon Listing for OPHW Plate]. Even the fact that CAP identifies the "hand grips" as "hand grips" is telling. The term "hand grips" itself expresses their functionality. CAP has alleged no facts from which the Court can infer that its OPHW weight plate does not serve these functions.

The "raised sphere" and "raised stylizing" of CAP's weight plates are also clearly functional. A utility patent filed by USA Sports, Inc. in 2004 to a weight plate similar to CAP's describes the "raised sphere" (16) feature as providing support for the collar (C) of the weight plate to receive a barbell. Ex. 4 at 2:49-53 [U.S. Patent No. 7,828,702]. And that patent also describes the "raised stylizing" (19) as proving further support for the collar. *Id*. Thus, the "raised sphere" and "raised stylizing" elements of CAP's alleged trade dress are functional and not entitled to trade dress protection.

14



CAP's trade dress claim also fails because there is nothing distinctive about CAP's Weight Plate designs. Many other companies have weight plate designs that utilize a "raised sphere surrounding the center hole" and "raised stylizing" that divides the plate into quadrants that each display information:

| CAP's OPG Weight Plate | Gopher | York |
|:---:|:---:|:---:|
| | | |

Compl. ¶ 33; Ex. 3 at Exhs. A-B thereto [Ring Decl.].

With respect to the OPHW Weight Plate, the only additional distinctive element that CAP attempts to allege is the "equally spaced and uniquely shaped hand grips." *Id.* Such hand grips are likewise commonplace in the industry:

| CAP's OPHW Weight Plate | Gympak | Ziva |
|---|---|---|
|  |  |  |

Compl. ¶ 33; Ex. 3 at Exhs. C-D thereto [Ring Decl.].

"[T]he fact that a similar trade dress is already being used by manufacturers of other kinds of products[] may indicate that that dress is no more than a concept or idea to be applied to particular products." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995). If the Court allows trade dress protection for the OPG Weight Plate, then CAP could claim exclusive ownership over a sweeping variety of designs used widely in the industry. *See Cardinal Motors Inc.*, *v. H&H Sports Protection USA, Inc.*, No. 20-CV-07899-PAC, 2022 WL 4109721, at *4 (S.D.N.Y. Sept. 8, 2022) (dismissing trade dress infringement for lack of specificity, and noting that the existence of similar products with similar features tended to show lack of distinctiveness).

Finally, CAP's trade dress claim is also insufficient because CAP failed to articulate any specific elements that describe distinct trade dress. CAP alleges that it owns protectable trade dress in its OPG and OPHW Weight Plate Designs. Compl. ¶ 29-35. But CAP's description of its trade dress as the "overall appearance of the plate," "raised stylizing," "font stylization," "arrangement

of information," and "uniquely shaped hand grips" lacks sufficient specificity to state a claim for trade dress infringement. *Id.* As noted above, CAP cannot meet its burden by referring to the "overall appearance" of the OPHW and OPG plates. And the "raised stylizing," "font stylization," and the "arrangement of information" are equally meaningless descriptors.

In view of the foregoing, CAP fails to offer a plausible and precise expression of the character and scope of the design features of its weight plates which could qualify as trade dress, and it fails to explain how they are nonfunctional. Accordingly, CAP's trade dress infringement claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### C.      Plaintiff Has Failed to Plausibly Allege the Existence of Trade Secrets

"To prevail on a misappropriation of trade secrets claim, a plaintiff must show that (1) a trade secret existed, (2) the trade secret was acquired through breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018).

CAP has not plead sufficient facts for the Court to infer that it actually owns any trade secrets. Rather, CAP has set out its purported trade secrets in broad, sweeping categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets. CAP describes its trade secrets as "its pricing information, sales histories, sales and pricing patterns, discounting practices, marketing practices, and customers." Compl. ¶ 45.

To be sure, a plaintiff need not spell out the details of the trade secret in its complaint. However, the plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies. *See, e.g., Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 701 (S.D. Tex. 2011) (granting a motion to dismiss claim based on alleged

misappropriation of "competitive knowledge of insurance regulations and processing" because it failed to "identif[y] the specific trade secret" that was entitled to protection).

In *Medafor, Inc. v. Starch Med. Inc.*, the plaintiff described the trade secrets at issue as "business methodologies, formulas, devices, and compilations of information, including suppliers and customers." No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009). The court deemed this description to be "so broad as to be meaningless" and "insufficient to inform [the defendant] of the basic fact of what exactly it is supposed to have stolen or unlawfully obtained," and thus dismissed the plaintiff's trade secret claim. *Id.*; s*ee also Clearline Techs. Ltd.*, 2012 WL 43366, at *11 (dismissing misappropriation claim because plaintiff "failed to identify the specific trade secret information it claims has been misappropriated").

As an example, plaintiff herein lists its "marketing practices" as one of its trade secrets. There are many types of "marketing practices" that are matters of general knowledge in the trade. CAP makes no attempt to distinguish its marketing practices that are allegedly secret from those that are not. *See S-E-A, Ltd. v. Cornetto*, No. CV JKB-18-1761, 2018 WL 3996270, at *3 (D. Md. Aug. 21, 2018) (granting a motion to dismiss a DTSA claim based on the alleged misappropriation of a client contact list for failure to plausibly allege those aspects of the list that were not "readily ascertainable through proper means"). The same reasoning applies to "pricing information, sales histories, sales and pricing patterns, discounting practices," and "customers." *See Webpass Inc. v. Banth, No. C14-02291 HRL*, 2014 WL 7206695, at *3 (N.D. Cal. Dec. 18, 2014) (concluding allegations of trade secrets to "network design and plans; its customer lists; customer pricing and financial information; marketing strategies; existing projects and proposals; and research and development strategies and related material" lacked sufficient particularity).

18

Curiously, CAP describes Amazon's trade secrets with more specificity than its own.[3] But these allegations are insufficient to put defendants on notice of what exactly they are accused of stealing *from CAP*. And allowing CAP to move forward with these vague claims prejudices defendants' ability to defend against them. The Court should therefore dismiss counts 2-3 of CAP's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## VI.    ALTERNATIVE RELIEF

Should the Court determine that it has jurisdiction over the defendants and that plaintiff has plead sufficient facts to overcome the 12(b)(6) hurtle, defendants move, in the alternative, for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

## VII.   CONCLUSION

Defendants respectfully request that the Court dismiss plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, defendants request that the Court dismiss Counts 1-3 for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) or for a more definite statement under Federal Rule of Civil Procedure 12(e).

---

[3] CAP alleges that "[t]o successfully sell products on Amazon as a wholesaler requires some guesswork on the part of sellers as to Amazon's preferred selling prices and MSRP for various products.  If sellers do not price their items within Amazon's preferred margins, items cannot be sold wholesale to Amazon.  Typical Amazon sellers do not have access to Amazon's preferred margins." Compl. ¶ 18.

13601802

Respectfully submitted,

By:      */s/ Sarah J. Ring*
     Sarah J. Ring
     *Attorney in Charge*
     Texas State Bar No. 24056213
     sring@porterhedges.com
     Elliott J. Deese
     Texas State Bar No. 24121423
     edeese@porterhedges.com
     **PORTER HEDGES LLP**
     1000 Main Street, 36th Floor
     Houston, Texas 77002
     T: (713) 226-6654
     F: (713) 226-6254

     Karl Rupp
     Texas State Bar No. 24035243
     krupp@soreylaw.com
     **SOREY & HOOVER LLP**
     100 N. 6th Street, Suite 502
     Waco, TX 76701
     Ph: 254-265-6817
     Fax:  903-230-5656

     *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on September 16, 2022, a true and correct copy of the foregoing document was served upon all counsel of record via ECF.

     */s/ Sarah J. Ring*
     Sarah J. Ring

13601802