United States District Court
Southern District of Texas
**ENTERED**
February 27, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAP BARBELL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-2371 |
| | § | |
| HULKFIT PRODUCTS, INC., | § | |
| BALANCEFROM LLC, AVINASH | § | |
| NAGAVILLI, QIDUO E-COMMERCE | § | |
| (ZHEJIANG) CO., LTD., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

CAP Barbell is a Texas company that sells fitness products, including weight plates and "trap" bars.[1] In its second amended complaint, CAP alleges that the defendants have misappropriated its intellectual property and infringed on its trade dress. HulkFit and Avinash Nagavalli have moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim; BalanceFrom has moved to dismiss on the same grounds. (Docket Entry Nos. 45, 46, 54, 55). CAP alleges that Qiduo is BalanceFrom's parent company, (Docket Entry No. 44 ¶ 6), but Quido has not joined the pending motions. The court grants the motions to dismiss. CAP's claims for unfair competition, conversion, tortious interference, and unjust enrichment claims are preempted by state law and dismissed with prejudice. The remaining claims are dismissed without prejudice and with leave to amend.

The reasons are set out below.

---

[1] A trap bar is a piece of exercise equipment used with interchangeable weight plates designed to reduce stress on the user's back, compared to a straight bar, when performing certain weightlifting maneuvers.

I.       **The Legal Standards**

       A.       **The Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

CAP must make a prima facie showing of personal jurisdiction. *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012). A federal court may exercise personal jurisdiction over a nonresident defendant when the long-arm statute of the forum state confers personal jurisdiction over that defendant and the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004). The Texas long-arm statute confers jurisdiction to the limits of due process. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *see also Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990) ("This court has decided that the broad language of the long-arm's statute's doing business requirement allows the statute to reach as far as the federal constitution permits.").

When the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state, the court may have general personal jurisdiction. "[A] court may assert jurisdiction over a foreign corporation to hear any and all claims against [it] only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). Due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state for a court to exercise general jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414–16; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). "Establishing general jurisdiction is 'difficult' and requires 'extensive contacts between a defendant and a forum.'" *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101–102 (5th Cir. 2018) (quoting *Johnston*, 523 F.3d at 609). "[E]ven

repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous[,] and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

The specific personal jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotation marks and citation omitted); *Halliburton Energy Servs., Inc.* v. *Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). The Fifth Circuit applies a "three-step test to determine whether specific jurisdiction exists." *Admar Int'l, Inc. v. Eastrock, LLC*, 18 F.4th 783, 786 (5th Cir. 2021)

> First, [CAP] must show that [the defendants] ha[ve] minimum contacts with [Texas]—that [the defendants] purposefully directed [their] activities at [Texas] and availed [themselves] of the privilege of doing business there. Second, [CAP] must show that its cause of action arises out of [the defendants'] [Texas] contacts. And third, if [CAP] satisfy the first two steps, then [the defendants] must show that exercising jurisdiction would prove unfair or unreasonable.

*Id.* (internal citations omitted).

Under the "effects test," in certain circumstances, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). The Fifth Circuit has clarified that the effects test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). "Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (citations omitted).

3

### B.        The Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

II.     Analysis

      A.     **Personal Jurisdiction**

The defendants argue that the court lacks both general and specific personal jurisdiction over them. CAP alleges that both HulkFit and BalanceFrom are organized under the laws of California and does not allege that either entity is incorporated or maintains its principal place of business in Texas. (Docket Entry No. 44 ¶¶ 3–4). CAP alleges that Nagavalli is a resident of the State of Washington and is the CEO and owner of HulkFit. (*Id.* ¶ 5). The defendants do not contest these allegations. There is no dispute that the alleged misappropriation occurred outside Texas. CAP alleges that 100 percent of the defendants' sales occur in Texas. (*Id.* ¶ 9).[2]

---

[2] CAP's allegation and its general personal jurisdiction argument is based on a misleading quotation from the transcript from the December 7 hearing. The portions of the transcript quoted by CAP, (*see* Docket Entry No. 44 ¶ 9), are as follows:

> THE COURT: Hang on. So you are willing to stipulate that 100 percent of the sales are made in Texas?
>
> MR. RUPP: What we are willing to stipulate, Your Honor, is that even if there were— even if discovery were to show that all or the majority of their sales are in the state of Texas, it doesn't change the jurisdictional math.

(Docket Entry No. 46-1 at 26:22–27:2).

> THE COURT: So you are stipulating that even assuming that a majority, 51 percent, 75 percent, 80 percent—how high do you want to go?—of the national sales are into Texas? Even stipulating that, it doesn't matter?
>
> MR. RUPP: That's what we say in our papers and we stand by that.

(*Id.* at 28:15–20). The next portion of the transcript quoted in the complaint begins with a sentence fragment:

> . . . factually. We are making an argument that even if—
>
> THE COURT: I understand.
>
> MS. RING:—all the sales were in Texas, it wouldn't matter because there is still no jurisdiction because there's no nexus between the alleged conduct that occurred on the West Coast and the sales. They are making an effects test. They were harmed in Texas, and that's their jurisdictional basis. And it doesn't work.

(*Id.* at 29:7–14).

The sentence ending with the word "factually" reads, in full:

5

HulkFit has submitted a declaration from Nagavalli, who states that HulkFit has no facilities, offices, or operations in Texas, and that HulkFit's employees and officers have never traveled to Texas on business. (Docket Entry No. 46-2 ¶¶ 6, 9). HulkFit argues that courts have rejected claims of general personal jurisdiction even when defendants do have employees and infrastructure in Texas. (Docket Entry No. 46 at 12–13). HulkFit argues that general personal jurisdiction is similarly inappropriate with respect to Nagavalli, who does not conduct business in, and has no ties to, Texas. (*Id.* at 13). BalanceFrom submits the declaration of Guangchao Liu, who states that BalanceFrom has no facilities, offices, or operations in Texas. (Docket Entry No. 45-2 ¶¶ 4–5). Liu states that BalanceFrom has never sent its employees or agents to Texas. (*Id.* ¶ 5).

There is little caselaw to guide the court's analysis of whether it may exercise general personal jurisdiction when the court does not sit in the corporation's state of incorporation or state in which the corporation maintains its principal place of business. There is authority that it is "incredibly difficult to establish general jurisdiction in a forum other than" those places. *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). To exercise general personal jurisdiction in the forum state, "the affiliations with the forum state must approximate physical presence." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 339 (5th Cir. 2020). The sale of products—even 100 percent of a company's sales of that product or other products—into a state

---

MS. RING: We are not willing to stipulate to anything factually. (*Id.* at 29:7–7).

The defendants did not stipulate to facts. Even had the defendants had made this stipulation, it would not affect the court's general personal jurisdiction analysis.

approximates physical presence, when, as here, the defendants otherwise have no presence. The court therefore concludes it lacks general personal jurisdiction over the defendants.

The defendants also argue that CAP has not made a prima facie showing of specific personal jurisdiction over them with respect to CAP's misappropriation claims, because CAP's claims do not arise out of the defendants' Texas conduct. The defendants argue that the alleged acts of misappropriation in other states do not confer specific personal jurisdiction over them in Texas.

CAP first argues that, under *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), adopted by the Fifth Circuit in *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999), the defendants' own websites and the third-party websites on which they sell products create specific jurisdiction. CAP basis its argument on the defendants' online presence and sales into Texas. CAP also argues that this court may exercise personal jurisdiction over the defendants even though the alleged misappropriation did not occur in Texas.

*Zippo* held that, for the personal jurisdiction analysis, internet use may be viewed on a spectrum. One end of that spectrum consists of "situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet.'" *Admar*, 190 F.3d at 336. (quoting *Zippo*, 952 F. Supp. at 1124). Personal jurisdiction is proper in that situation. *Id.* At the other end of the spectrum "are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet." *Id.* In the middle of the spectrum finds "are situations where a defendant has a website that allows a user to exchange information with a host computer." *Id.* In this wide middle, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website."

*Id.* (quoting *Zippo*, 952 F. Supp. at 1124). The allegations in this case occupy the middle of the *Zippo* spectrum.

The *Admar* court noted that "[t]he analysis applicable to a case involving jurisdiction based on the Internet should not be different at its most basic level from any other personal jurisdiction case." *Admar*, 18 F.4th at 786. *Zippo* does not change the general rules of specific personal jurisdiction.

In *Admar*, the plaintiff argued that jurisdiction existed for four reasons:

> (1) [the defendant] runs an interactive website; (2) the accused products are illegally displayed, advertised, promoted, and offered for sale on the website; (3) the website targets the entire United States, so [the defendant] has minimum contacts with [the forum state]; and (4) this suit arises from those contacts.

*Id.* 786–87. Although the website was not "passive," because it allowed customers to create accounts, purchase products, and provide feedback on those purchases, the court emphasized that "[w]ebsite interactivity is important only insofar as it reflects . . . purposeful targeting of residents of the forum state." *Id.* at 787 (quoting *Pervasive Software*, 688 F.3d at 228). An interactive website does not confer jurisdiction in cases when the website does not distinguish the forum state from any other state. *Id.* The *Admar* court "expressly h[e]ld . . . that a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there." *Id.*

CAP seeks to distinguish *Admar* because the defendant in that case made no sales to the forum state. The defendants here do not contest that they have made sales to Texas. CAP alleges that the defendants sell their products on their own websites, on Amazon.com and Walmart.com, and in physical Walmart locations in Texas. (Docket Entry No. 44 ¶ 10). The *Admar* court did not hold that the sales of products was enough for jurisdiction; instead, the court simply recited the lack of sales as one indication that there was no jurisdiction because there was no evidence the

8

defendant had "targeted" the forum state. *Admar*, 18 F.4th at 787. Selling products, online or otherwise, does not in itself confer specific personal jurisdiction.

CAP's argument is not persuasive because minimum contacts must be targeted contacts, not merely fortuitous ones. *Burger King*, 471 U.S. at 475 ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.") (internal quotation marks and citations omitted). CAP does not allege that the defendants have singled out the Texas market for their advertising or sales by their own acts, rather than by the acts of third-party distributors and customers. *Walden*, 571 U.S. at 284 ("[T]the relationship must arise out of contacts that the defendant *himself* creates with the forum State.") (internal quotation marks omitted).

CAP stresses that the defendants imported products through Texas with the knowledge that Texas customers would purchase those products. (Docket Entry Nos. 50 at 12, 51 at 12). Again, there are no allegations that the defendants singled out Texas residents as potential customers on the defendants' online sales platforms. CAP does not point to support for its argument that a defendant's awareness of the importance of the Texas market to the vitality of its business constitutes minimum contacts with Texas. CAP does not point to authority stating that importing products through a state's ports allows the exercise of personal jurisdiction by the courts of that state over tortious conduct committed outside the state. The district court decisions CAP cites do not change the firmly established requirement that a plaintiff demonstrate minimum contacts through suit-related conduct. *See Walker v. Newgent*, 583 F.2d 163, 168 (5th Cir. 1978) ("[I]nquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case.").

CAP emphasizes the damage the defendants allegedly caused to its internet sales. (Docket Entry No. 44 ¶¶ 11–14). CAP argues that "[t]he only logical explanation for the decrease is simply that sales CAP Barbell would have made were being diverted to another Amazon seller offering a competing product." (Docket Entry Nos. 50 at 8, 51 at 8). CAP argues alleging that the defendants' sales to Texas "are the direct result of . . . misappropriation" makes out "a *prima facie* case for personal jurisdiction." (Docket Entry Nos. 50 at 8–9, 51 at 8). As a result, CAP argues, the court may exercise personal jurisdiction even though the alleged misappropriation did not occur in Texas.

While tortious conduct outside the forum may create personal jurisdiction when the harmful effect of that conduct is suffered in the forum, the effects test is not a substitute for the minimum contacts analysis. *See Brandt*, 195 F.3d at 212. ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."). Nor does the stream-of-commerce theory confer personal jurisdiction on this record. The Fifth Circuit's decision in *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006), addressed products-liability and other cases raising similar "public policy concerns." *Id.* at 473. Those concerns are not present here. *Luv n' Care* otherwise confirmed that "the underlying cause of action must 'arise out of' the defendant's contacts with the forum state." *Id.* at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)); *see also Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–18 (5th Cir. 2021) ("A defendant may have many meaningful ties to the forum, but if they do not connect to the plaintiff's claim, they cannot sustain [the court's] power to hear it."). Because there are no contacts between the defendants and Texas related to CAP's tort claims, this court lacks personal jurisdiction over the defendants with respect to those claims.

The defendants do not appear to contest that the court has personal jurisdiction with respect to CAP's trade dress claim, asserted against all the defendants except Nagavalli. The defendants instead argue that CAP has failed to state that claim. The bulk of authority suggests that a Lanham Act claim arises in the district where the "passing off" or sale of the accused product allegedly occurs. *See, e.g.*, *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994); *see also* 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:38.40 (5th ed.) ("Today, almost all courts follow the rule that a claim of trademark infringement takes place where the allegedly infringing sales occur."). The defendants do not contest that the accused products have been sold in Texas.

### B. Failure to State a Claim

The defendants argue that CAP has failed to state a claim under the Lanham Act for trade-dress infringement. Trade dress is a form of intellectual-property protection that acknowledges that "[t]he design or packaging of a product may acquire distinctiveness which serves to identify the product with its manufacturer or source." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001). Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. Tex. 2010). "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods or products." *TrafFix*, 532 U.S. at 28.

To state a claim trade-dress infringement for an unregistered mark, a plaintiff must first plead facts demonstrating that its trade dress is either inherently distinctive or that it has acquired distinctiveness through secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). An otherwise inherently distinctive trade dress is entitled to protection only if it is

11

also nonfunctional. *Id*. "If a product feature is functional, it cannot be protected trade dress." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002). The Lanham Act limits the scope of trade-dress protection by providing that "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). Second, a plaintiff must show that a defendant's trade dress creates a likelihood of confusion with the plaintiff's. *Taco Cabana*, 505 U.S. at 769–70.

Because CAP's claimed trade dress is not registered, CAP has the burden to show that the claimed dress is valid, distinctive, and not functional. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). The defendants argue that CAP's allegations with respect to nonfunctionality are conclusory and that CAP's claimed trade dress is functional as a matter of law, or, alternatively, is too generic to be protected. CAP responds that its allegations successfully state a claim for trade-dress infringement and that the defendants' motions are based on material outside the pleadings that the court cannot consider on a motion to dismiss.

"[T]he primary test for functionality is whether the product feature is essential to the use or purpose of the product or if it affects the cost or quality of the product." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 357 (5th Cir. 2002). Design features are "functional if they are essential to the use or purpose of the [product] or affect the cost or quality of the [product." *Id*. "The availability of alternative designs is irrelevant." *Id.*

CAP's trade-dress claims are insufficiently pleaded. For example, with respect to its "OPG Weight Plate," CAP alleges as follows:

> [The OPG Weight Plate's] trade dress is non-functional because the overall appearance and arrangement of these various elements is nonfunctional, and the individual elements are nonfunctional. For example, the coloring of the plates and font is nonfunctional, the font style is nonfunctional, and the way the information is arranged in quadrants is nonfunctional. To CAP Barbell's knowledge, CAP Barbell was the first to create and use this design.

(Docket Entry No. 44 ¶ 42; *see also id.* ¶¶ 43, 46–47 (making similar allegations with respect to the "OPHW Weight Plate," "Olympic Trap Bar," and "Olympic Bolted Trap Bar")). For each product, CAP alleges that the overall appearance of its product is nonfunctional, then identifies elements of the product and states that the element is nonfunctional. These allegations are conclusory. *See Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co. Ltd.*, 839 F. App'x 95, 98 (9th Cir. 2020) (affirming dismissal of a case in which the plaintiff pleaded only that the design features were "not essential to the function of the product, do not make the product cheaper or easier to manufacture, and do not affect the quality of the product"). CAP provides photographs placing its products and the defendants' products side by side. The text on the weight plates indicates that they are for "standard barbell[s]" and states the weight of the plate. CAP does not specify the color or the texture of the surface it claims as its trade dress. (The court notes that, at least in the photographs in the complaint, the colors appear different and the texture difficult to make out). It is not clear how the arraignment of information (the plates' weight in metric and imperial units and its status as a "standard barbell") into four distinct quadrants is nonfunctional, or how the means of grasping a plate is nonfunctional. The same is true of the trap bars—CAP does not allege how its hexagonal bar is nonfunctional other than to note that other shapes are possible. But copying in itself does not violate the law, and "alternative designs are not germane to the traditional test for functionality." *Ritter*, 289 F.3d at 358.

CAP's complaint alleges that its product designs are nonfunctional. But to successfully state a claim for trade-dress infringement, CAP must identify what it is about the products' trade dress that make the trade dress nonfunctional and how the defendants' products infringe on CAP's trade dress. The visual comparisons CAP submits say nothing about the (non)functionality of the competing products' designs.

13

The defendants urge the court to dismiss CAP's trade-dress claims with prejudice. But CAP has not had the benefit of a written decision from the court identifying inadequacies in its complaint, and the court is not convinced that amendment would be futile. The court will dismiss the trade-dress claims without prejudice and with leave to amend.

If CAP successfully repleads its trade-dress claims, the court may be able to assert personal jurisdiction with respect to CAP's tort claims under the doctrine of pendant personal jurisdiction. Pendant personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (citing *United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir. 2002)). Pendant personal jurisdiction is discretionary. *Gen. Elec. Capital Corp. v. Mackzilla, LLC*, No. CV H-15-2425, 2016 WL 1059529, at *5 (S.D. Tex. Mar. 17, 2016).

CAP's causes of action all involve the alleged misappropriation of its products' trade secrets and trade dress. There is little reason to split this action into two lawsuits, one here and one on the West Coast. The court grants CAP leave to amend the trade-dress claims.

Finally, the defendants argue that CAP's state-law claims for unfair competition, conversion, tortious interference, and unjust enrichment are preempted by Texas statutory law. CAP does not contest that these claims are preempted. They are dismissed, with prejudice.

### III.   Conclusion

The motions to dismiss are granted. CAP's unfair competition, conversion, tortious interference, and unjust enrichment claims are dismissed with prejudice. The remaining claims are dismissed without prejudice for failure to state a claim and for lack of personal jurisdiction.

CAP must file a third amended complaint by March 17, 2023. The defendants must file their responses by April 14, 2023.

SIGNED on February 27, 2023, at Houston, Texas.

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ Lee H. Rosenthal
‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ United States District Judge